1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

PAMELA KORBUT,

                   Plaintiff,

     v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                 Defendant.

CASE NO. 3:16-CV-05205-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

16

17

18

19

20

      Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

21

22

23

      After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the opinion of two of Plaintiff's examining psychologists, and by failing to properly evaluate Plaintiff's subjective symptom testimony. Therefore, this

24

1  matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further

2  proceedings.

## PROCEDURAL& FACTUAL HISTORY

4        On June 9, 2009, Plaintiff filed an application for DIB and SSI. *See* Dkt. 11,

5  Administrative Record ("AR") 251-265. Plaintiff alleges she became disabled on November 15,

6  2006, due to bipolar disorder, depression, head injury, and back/neck/shoulder pain, all of which

7  arouse out of an automobile accident in late November, 2006. *See* AR 253, 279.  Plaintiff's

8  applications were denied upon initial administrative review and on reconsideration. *See* AR 198-

9  201. ALJ Richard Say held a hearing on April 20, 2011, at which Plaintiff, represented by

10  counsel, appeared and testified. *See* AR 174.

11        On July 11, 2011, the ALJ found Plaintiff was not disabled within the meaning of

12  Sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. AR 84. Plaintiff's request

13  for review of the ALJ's decision was denied by the Appeals Council on February 20, 2013,

14  making that decision the final decision of the Commissioner of Social Security (the

15  "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481.

16        Plaintiff filed a complaint in the United States District Court for the District of Oregon

17  seeking judicial review of the Commissioner's final decision. On April 28, 2014, the Hon. Mark

18  D. Clarke entered a stipulated remand order, reversing and remanding the case to the

19  Commissioner for further administrative proceedings. AR 1270-71, 1211. On remand, ALJ S.

20  Andrew Grace held a second hearing and issued a new decision on November 20, 2015, finding

21  Plaintiff was disabled between January 1, 2010 and May 1, 2011, but was not disabled within the

22  meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) during the period prior to January 1, 2010

23  or after May 1, 2011. AR 1195. Plaintiff argues the ALJ's decision should be reversed and

24

ORDER ON PLAINTIFF'S COMPLAINT - 2

1    remanded for the immediate calculation of benefits between March 1, 2007 and January 1, 2010,

2    because the ALJ erred by: 1) improperly rejecting the opinions of two of Plaintiff's examining

3    psychologists; and 2) improperly discounting Plaintiff's subjective symptom testimony.. Dkt. 13,

4    pp. 1-2.

5    **STANDARD OF REVIEW**

6         Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

7    security benefits only if the ALJ's findings are based on legal error or not supported by

8    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

9    Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

10    more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

11    mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

12    750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

13    **DISCUSSION**

14         The critical issue in this case is whether Plaintiff's disabling limitations began prior to

15    January 1, 2010, thus entitling Plaintiff to a longer closed period of disability.[1] *See* Dkt. 13, pp.

16    1-2.The ALJ found Plaintiff was disabled for the closed period between January 1, 2010 and

17    May 1, 2011. AR 1195. However, prior to January 1, 2010, the ALJ found Plaintiff had the RFC

18    to perform a full range of work at all exertional levels, but with additional non-exertional

19    limitations. AR 1180. Specifically, the ALJ found Plaintiff was limited to: simple, routine and

20    repetitive tasks consistent with unskilled work; low stress work; occasional superficial contact

21

22         [1] In cases involving a closed period of disability, "the ALJ determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped

23    prior to the date of [the ALJ's] decision. *Newbold v. Colvin*, 718 F.3d 1257, 1262 n.1 (10th Cir. 2013) (*quoting Shepherd v. Apfel*, 184 F.3d 1196, 1199, n.2 (10th Cir. 1999)). *See* 20 C.F.R. §§

24    404.1594, 416.994.

ORDER ON PLAINTIFF'S COMPLAINT - 3

1 │ with the public and coworkers and occasional contact with supervisors; and performing at a

2 │ standard or ordinary pace, rather than production rate pace. AR 1180. Plaintiff has not

3 │ challenged the ALJ's determination Plaintiff was able to return to work as of May 1, 2011.

4 │ However, Plaintiff argues the ALJ's RFC finding for the period of time prior to January 1, 2010

5 │ was erroneous, as it failed to properly account for the opinions of two of Plaintiff's examining

6 │ physicians and was based on an improper evaluation of Plaintiff's subjective symptom

7 │ testimony. Thus, Plaintiff argues her closed period of disability began March 1, 2007 and ended

8 │ May 1, 2011. [2]

9 │     I.         Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

10 │     **A.  Standard**

11 │     The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

12 │ opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

13 │ 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

14 │ *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

15 │ examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

16 │ set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

17 │ *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ

18 │ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

19 │ clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

20 │

21 │

22 │ [2] Plaintiff cites to the opinions of Dr. McKenna and Dr. Reiter to argue her period of disability began on March 1, 2007. Dkt. 13, p. 1. However, as discussed below, Dr. McKenna only opines Plaintiff's limitations began in "March, 2007." AR 1046. Plaintiff does not cite, nor

23 │ can the Court find, a more specific date in the record. If the ALJ determines, on remand, Plaintiff is entitled to a closed period of disability beginning prior to January 1, 2010, the ALJ will need

24 │ to further develop the record to establish a specific start date.

1   F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

2   explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

3   157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22).

### B.  Application of Standard

#### 1. Molly McKenna, Ph.D.

6       Dr. McKenna examined Plaintiff on May 27, 2011. AR 1032. In relating her personal

7   history, Plaintiff indicated "she has had unusual perceptions, including hearing voices, the

8   feeling of compelled action or movement, and increased difficulty in functioning" starting after a

9   car accident five years prior. AR 1033. Plaintiff also related a family history of schizophrenia,

10  hallucinations, and other mental illness. AR 1034. Plaintiff reported a history of alcohol and

11  methamphetamine use, but denied recent use of either substance, and denied use of

12  methamphetamines outside of a four month period surrounding her 2006 car accident. AR 1036-

13  37.[3] On mental status examination, Plaintiff presented with normal appearance, positive mood

14  and affect, and was oriented to all spheres. AR 1038-39. However, Plaintiff demonstrated

15  unusual, puzzling conclusions influenced by psychotic thought content, reported hearing voices

16  of various kinds and types, demonstrated low average fund of knowledge and other memory and

17  intellectual impairments, and impaired insight and judgment. AR 1038-39. Dr. McKenna also

18  noted Plaintiff's "strong verbal skills, socially appropriate presentation, and pleasant interaction

19  style serve to obscure the unusual thought processes and delusional ideation she is constantly

20  experiencing." AR 1044.

---

[3] Dr. McKenna noted this was inconsistent with Plaintiff's medical records, which reflected methamphetamine use in 2007. *See* AR 1037.

1    Dr. McKenna diagnosed Plaintiff with Psychotic Disorder, NOS (Rule out Substance-

2  Induced, Persisting Psychotic Disorder or Psychotic Disorder due to Head Trauma) and Bipolar

3  Disorder, NOS. AR 1042. As a result of these conditions, Dr. McKenna opined Plaintiff has had

4  significant limitations since as early as March, 2007. AR 1046. Specifically, Dr. McKenna

5  opined Plaintiff had marked limitations in her ability to: understand and remember complex

6  instructions; carry out complex instructions; make judgments on complex work-related

7  decisions; and interact appropriately with supervisors. AR 1045-46. Dr. McKenna also opined

8  Plaintiff would have moderate limitations in her ability to interact appropriately with co-workers

9  and respond appropriately to usual work situations and to changes in a routine work setting, and

10  mild limitations in her ability to: understand and remember simple instructions; carry out simple

11  instructions; make judgments on simple work-related decisions; and interact appropriately with

12  the public. AR 1045-46.

13    The ALJ considered Dr. McKenna's report as part of his evaluation of Plaintiff's RFC

14  from January 1, 2010 onward:

15    Dr. McKenna's opinion is given significant weight during the closed period
      [between January 1, 2010 and May 1, 2011]. This opinion supports disabling
16    severity during the closed period, but after this month, the undersigned finds the
      claimant was able to return to sustained substantial gainful activity level work,
17    which indicates significant improvement. Additionally, thereafter, the claimant
      reported being able to better manage her voices and other symptoms. Lastly,
18    records show the claimant ceased regular psychiatric treatment, also suggesting
      improved symptomatology.
19
   AR 1188. However, the ALJ did not address Dr. McKenna's opinion that Plaintiff's limitations
20
   were present as early as March 2007. AR 1046, 1188. Plaintiff argues this was error, and the
21
   Court agrees.
22
     An ALJ is not required to adopt the opinion of an examining physician or psychologist;
23
   however, in order to reject all or part of a medical opinion, an ALJ must offer at least a specific
24

ORDER ON PLAINTIFF'S COMPLAINT - 6

1  and legitimate reason for doing so. *Nguyen*, 100 F.3d at 1466 (*citing Lester,* 81 F.3d at 831).  An

2  ALJ errs by purporting to give great weight to an examining physician, yet failing to include all

3  of the physician's opined limitations into the RFC. *See Betts v. Colvin*, 531 Fed.Appx. 799, 800

4  (9th Cir. 2013) (finding the ALJ committed reversible error by purporting to give great weight to

5  an examining physician, yet failing to include many of the physician's opined limitations in the

6  RFC).  Further, an ALJ "may not reject 'significant probative evidence' without explanation."

7  *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d

8  1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The

9  "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at

10  571.

11          Though the ALJ gave significant weight to Dr. McKenna's opinion and found Plaintiff's

12  limitations prevented her from engaging in any work existing in significant numbers in the

13  national economy between January 1, 2010 and May 1, 2011, the ALJ failed to acknowledge Dr.

14  McKenna opined those same disabling limitations had persisted since March, 2007. AR 1188.

15  Notably, the ALJ breaks his discussion of the medical opinion evidence into two sections: those

16  opinions which were rendered prior to January 1, 2010 and those rendered between January 1,

17  2010 and May 1, 2011. *Compare* AR 1184-85 *with* AR 1188. However, the mere fact a medical

18  expert *rendered* an opinion on a certain date does not mean the opinion is *irrelevant* to an earlier

19  period of time. *See Lester,* 81 F.3d at 832 (noting "medical evaluations made after the expiration

20  of a claimant's insured status are relevant to an evaluation of the preexpiration condition").

21  Because the ALJ failed to address Dr. McKenna's opinion as to the onset date of Plaintiff's

22  disabling limitations, let alone offer specific and legitimate reasons for giving this aspect of Dr.

23  McKenna's opinion less weight, the ALJ erred. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir.

24

1   2012); *Betts*, 531 Fed.Appx. at 800. Further, Dr. McKenna's opinion that Plaintiff's disabling

2   limitations had persisted for almost three years prior to January 1, 2010, is materially

3   inconsistent with the ALJ's conclusion Plaintiff's disabling limitations began on January 1, 2010.

4   Thus, the ALJ's error was not harmless, and requires remand. *See Molina v. Astrue*, 674 F.3d

5   1104, 1115 (9th Cir. 2012) ("an ALJ's error is harmless where it is inconsequential to the

6   ultimate nondisability determination") (internal citations omitted).

7                                   2.*Greg Reiter, Ph.D.*

8          In March, 2007, Plaintiff was involuntarily committed and hospitalized. AR 481, 492,

9   1182. During the course of her hospitalization, Dr. Reiter examined Plaintiff for the purpose of

10  developing "a better understanding of her thinking processes and specifically to rule out a

11  psychosis." AR 492. On examination, Dr. Reiter documented impairment in Plaintiff's insight

12  and judgment, as well as abnormalities in Plaintiff's mood and thinking characteristics. AR 492-

13  93. Dr. Reiter found Plaintiff's score on the MMPI-2 were consistent with mania, as well as

14  "bizarre thinking processes, grandiosity, and the likelihood of some paranoid ideation." AR 493.

15  Further, Plaintiff's results on a wide range intelligence test reflected "low average to dull

16  normal" IQ scores, except in the area of Verbal IQ. AR 493. Ultimately, Dr. Reiter concluded

17  Plaintiff exhibited manic and poorly regulated thinking processes, which also appeared to be

18  mildly psychotic. AR 493. Dr. Reiter could not identify the etiology of Plaintiff's regression, but

19  indicated it may, in part, have been related to the use of methamphetamines. AR 493.

20         Though the ALJ discussed Plaintiff's hospitalization and associated records in general

21  terms (AR 1182), the ALJ does not discuss, nor otherwise cite, Dr. Reiter's report. Plaintiff

22  argues the ALJ's failure to consider Dr. Reiter's report was harmful error, as it was consistent

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 8

1  with Dr. McKenna's evaluation, and corroborates Plaintiff's disabling limitations beginning in

2  March, 2007.

3      An ALJ need not discuss all evidence presented to him. *Vincent*, 739 F.2d at 1394-95. An

4  ALJ must only explain why "significant, probative evidence" has been rejected. *Id.* at 1395.

5  Regardless of its source, however, an ALJ is required to evaluate every medical opinion received

6  into evidence. 20 C.F.R. §§ 404.1520b; 404.1527(b) & (c); 416.927(b) & (c). Here, the ALJ does

7  not discuss Dr. Reiter's report whatsoever. Further, Dr. Reiter's opinion and examination from

8  March, 2007 bears marked similarities to Dr. McKenna's assessment of Plaintiff's disabling

9  conditions, and corroborates Dr. McKenna's opinion that Plaintiff's limitations have been

10 present since at least March, 2007. Thus, the ALJ's evaluation of the medical opinion evidence

11 was incomplete, requiring remand for the ALJ to address Dr. Reiter's opinion. *See Williams v.*

12 *Astrue*, 493 Fed.Appx. 866, 868-69 (9th Cir. 2012); *Juhala v. Comm'r of Soc. Sec. Admin.*, 235

13 Fed.Appx. 473, 575 (9th Cir. 2007). *See also Levesque v. Barnhart*, 2002 WL 1913029 (D.

14 Mass. Aug. 20, 2002).

15      II.      Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by
                Substantial Evidence, for Finding Plaintiff Not Fully Credible.
16
           **A. Standard**
17
      If an ALJ finds a claimant has a medically determinable impairment which reasonably
18
   could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the
19
   ALJ may reject the claimant's testimony only "by offering specific, clear and convincing
20
   reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12
21
   F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility
22
   for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*
23
   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7
24

1   (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one

2   rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence

3   in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair,*

4   885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

5   evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

6   decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a

7   credibility determination where that determination is based on contradictory or ambiguous

8   evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for

9   discrediting a claimant's testimony should properly be discounted does not render the ALJ's

10   determination invalid, as long as that determination is supported by substantial evidence.

11   *Tonapetyan* , 242 F.3d at 1148.

12                  **B.  Application of Standard**

13          At the hearing, Plaintiff testified that during the period between 2007 and 2010, she

14   experienced frequent audible hallucinations and involuntary hand and tongue movements. AR

15   1219, 1222-23. Plaintiff indicated these symptoms had been occurring on a near-constant, daily

16   basis, but that she did not report these symptoms to others until 2010. AR 1223, 1227. Plaintiff

17   also testified she had not used methamphetamines since at least March, 2007. AR 1218.

18          Here, the ALJ failed to offer specific, clear and convincing reasons for discounting

19   Plaintiff's subjective symptom testimony. First, the ALJ cited Plaintiff's work in an adult foster

20   home in 2009 as a basis for finding Plaintiff was capable of more work than she alleged during

21   the period at issue. AR 1182, 1212-13. However, Plaintiff testified that, while her supervisors did

22   not express any problems with her work performance, Plaintiff stopped working due to her

23   ongoing psychological symptoms. AR 1212. On the evidence in the record, the ALJ's citation to

24

1  Plaintiff's brief, unsuccessful work attempt in 2009 is not a specific, clear, and convincing

2  reason for finding Plaintiff less than fully credible. *See Lingenfelter v. Astrue*, 504 F.3d 1028,

3  1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short

4  period of time and, because of his impairments, *failed*, that he did not then experience pain and

5  limitations severe enough to preclude him from *maintaining* substantial gainful employment.").

6      Next, the ALJ cites Plaintiff's lack of treatment between 2007 and 2010 to conclude

7  Plaintiff would have sought treatment had her symptoms been more limiting. AR 1181-82.

8  However, this reasoning is neither clear and convincing, nor is it supported by substantial

9  evidence. "[I]t is a questionable practice to chastise one with a mental impairment for the

10  exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465

11  (9th Cir. 1996) (*quoting Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Further, an

12  individual's failure to seek treatment can be, itself, a symptom of a severe mental impairment.

13  *See Garrison v. Colvin*, 759 F.3d 995, n. 24 ("we do not punish the mentally ill for occasionally

14  going off their medication when the record affords compelling reason to view such departures

15  from prescribed treatment as part of claimants' underlying mental afflictions.") (*citing Martinez*

16  *v. Astrue*, 630 F.3d 693 697 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010);

17  *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). Here, Plaintiff testified she did not seek

18  treatment for her hallucinations and other symptoms until 2010 because privacy about her

19  condition was "part of [her] healing process," as well as her belief that treatment would not have

20  changed anything.  AR 1226-27. Significantly, providers from 2007 onwards document

21  Plaintiff's lack of insight into her condition; irrational, illogical, and fragmented thinking; and a

22  belief that her hallucinations and other symptoms were a positive attribute. AR 493, 1039-44,

23

24

1  1153. On this record, the fact Plaintiff did not seek treatment until 2010 was not a clear and

2  convincing reason to discount Plaintiff's subjective symptom testimony.

3         Finally, the ALJ suggests Plaintiff's testimony was unsupported by the objective medical

4  evidence. Specifically, the ALJ discusses relatively normal mental status examinations in late

5  2007 and early 2008, and notes the records from Plaintiff's 2007 hospitalization are unclear as to

6  whether her presentation on examination was the result of methamphetamine use or the

7  claimant's underlying mental health issues. AR 1181-83. However, there are no urinalysis

8  reports or other evidence in the record to suggest Plaintiff used methamphetamine after March,

9  2007. Further, as discussed above, the ALJ's other reasons for discounting Plaintiff's testimony

10  were not clear and convincing reasons supported by substantial evidence. As a claimant's

11  subjective symptom testimony "cannot be rejected on the sole ground that it is not fully

12  corroborated by objective medical evidence," the fact the ALJ found the objective medical

13  evidence did not support Plaintiff's allegations is not a legally sufficient reason to discount her

14  testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Finally, an evaluation of a

15  claimant's testimony relies, in part, on an accurate assessment of the medical opinion evidence.

16  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As discussed in Section I, above, the ALJ erred by

17  failing to properly discount part of the opinion of Dr. McKenna, and in failing to consider Dr.

18  Reiter's opinion. Thus, the ALJ failed to properly discount Plaintiff's subjective symptom

19  testimony.

20    III.    Whether the Case Should be Remanded for an Award of Benefits or Further
              Proceedings

21

22         Plaintiff argues the case should be reversed and remanded for the award of benefits,

     rather than for further proceedings.

23

24

1    Generally, when the Social Security Administration does not determine a claimant's

2  application properly, "the proper course, except in rare circumstances, is to remand to the agency

3  for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

4  2004) (citations omitted). However, the Ninth Circuit has established a "test for determining

5  when [improperly rejected] evidence should be credited and an immediate award of benefits

6  directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen*, 80 F.3d at

7  1292. This test, often referred to as the "credit-as-true" rule, allows a court to direct an

8  immediate award of benefits when:

9        (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
          evidence, (2) there are no outstanding issues that must be resolved before a
10       determination of disability can be made, and (3) it is clear from the record that the
          ALJ would be required to find the claimant disabled were such evidence credited.

11

*Harman,* 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v.*
12
*Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of*
13
*Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Further, even if the ALJ has made the
14
three errors under *Harman* and *Smolen*, such errors are relevant only to the extent they impact
15
the underlying question of Plaintiff's disability. *Strauss v. Commissioner of the Social Sec.*
16
*Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the
17
statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may
18
be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)). Therefore,
19
even if the credit-as-true conditions are satisfied, a court should nonetheless remand the case if
20
"an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."
21
*Garrison*, 759 F.3d at 1021 (*citing Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2004)).
22
     Here, outstanding issues must be resolved. For example, Dr. McKenna's opinion as to the
23
onset of Plaintiff's limitations appears to conflict with the opinion of Dr. Tom Dooley, Psy.D.,
24

1  who opined in August, 2009 that Plaintiff would be a good candidate for vocational

2  rehabilitation in order to find "a job that is within her current capacities." AR 895. *See Harman*,

3  211 F.3d at 1180. *See also Treichler*, 775 F.3d at 1105-06. Therefore, the case should be

4  remanded for additional proceedings.

5  **CONCLUSION**

6       Based on the foregoing reasons, the Court finds the ALJ erred by failing to properly

7  consider Dr. McKenna and Dr. Reiter's opinion, and in evaluating Plaintiff's subjective

8  symptom testimony. Therefore, the Court orders this matter be reversed and remanded pursuant

9  to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical

10  opinion evidence, reevaluate Plaintiff's subjective symptom testimony, re-evaluate Plaintiff's

11  RFC for the period between March, 2007 and January 1, 2010, and proceed on to Step Four

12  and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the

13  record as needed. Judgment should be for Plaintiff and the case should be closed.

14       Dated this 13th day of September, 2016.

15

16                      David W. Christel

17                      United States Magistrate Judge

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 14